State number 16-1344 et al. National Environmental Development Association's Clean Air Project Petitioners v. Environmental Protection Agency. Ms. Wood for Petitioners. Mr. Duela for Respondent. Ms. Broome for Petitioners' Rebuttal. May it please the Court. My name is Allison Wood and I'll be speaking on behalf of Petitioners today. I'd like to reserve a few minutes for rebuttal. Section 301A2 of the Clean Air Act directs EPA to resolve inconsistencies in how its regions implement and enforce the Clean Air Act. In its amended regional consistency regulations, EPA has abandoned any effort to try to do this with regard to regional and local cases. Rather, in those regulations, EPA is embracing inconsistency. For the same reasons set forth by this Court in National Environmental Development Association's Clean Air Project v. EPA, which because that's a mouthful I will call the NEDACAP case, the amended regional consistency rules should be vacated. In 1977, Congress added Section 301A2 to the Clean Air Act because it was concerned about inconsistency in the regions. That provision directed EPA to promulgate regulations for the regions to follow in carrying out a delegation of authority from the administrator. Under the statute, those regulations must be designed, one, to assure fairness and uniformity in the criteria, procedures, and policies applied by the regions, and two, it must provide a mechanism for identifying and standardizing inconsistencies or varying criteria, procedures, and policies that happen in the regions. Counsel, why don't you go right to the problem of judicial inconsistencies and non-acquiescence. Your Honor, EPA argues here that what they want to employ is a common law doctrine called inter-circuit non-acquiescence. We are quite familiar with that. The issue here, Your Honor, is that Section 301A2 precludes EPA from doing that here. Then tell us what precisely the remedy you insist on. Do I understand you to take the position that once a circuit court decides an issue, then EPA must conform to that in every other circuit? No, Your Honor, we do not take that position. That would be an extreme situation. What we do take the position of is that EPA has to establish in its regulations some type of mechanism. The statute is very clear to identify that inconsistency, to attempt to cavern it, and there are no limits in the amended consistency. I still don't understand. What does that mean? Well, Your Honor, it's not what EPA has done here. I do think that there may be another ground. I'm trying to figure out what you're asking for. Where the alleged inconsistency is born of circuit decisions. All right, so if an inconsistency arises because one of the circuits says something that conflicts with EPA, what it can't do is what it's doing here, which is allow that inconsistency to remain for all time. What are they supposed to do? We keep asking what should they do? What is it you're asking? What remedy are you asking for? Well, there are a variety of things. We can't even go to the question of standing, really, although we had previously held you have standing. But I'm trying to figure out what relief. Well, the first thing that EPA could do would be to seek cert from the Supreme Court. That would be one remedy.  And if the Supreme Court denies it, another remedy would be that it could undergo some type of a national rulemaking to try to remedy the inconsistency. How is that possible? What if one says, you know, uses the bubble concept with respect to nearby facilities and the other one says, no, bubble is not possible. That certainly is. Take some of it. The Sixth Circuit says one thing. And then following your approach, you have to follow it. And then the Seventh Circuit comes up with another one. And then the Eighth Circuit weighs in and they have yet another one. What's EPA supposed to do? Right. And that is the situation where, you know, it would be impossible to remedy the inconsistency if you had different circuit decisions. But the issue here is that the regulations don't cabin the limit and the authority to that type of a situation. It says you could have just one. Does your reading of the statute permit even that? Your reading is they have to assure uniformity. It doesn't say if they can or if they'd like to or if the Supreme Court lets them. Your position is it always has to be uniform. Isn't that your position? I think they always have to try to have it be uniform. Where do words try in the statute? Well, I'm acknowledging the reality of the situation that Judge Edwards just said, which is there can arise a situation where you have one, you know, decision from the Sixth and, say, another from the Ninth and they're in conflict. Right. Well, that's what they seem to be trying to do here. And since you're already acknowledging that it can't be uniform. They're not limiting it just to that one situation, Your Honor, with all due respect. They're conceding, with all due respect, that it can't necessarily be uniform. Now the question is how much uniformity is okay? And that is correct. I am conceding that in certain situations it may not be an inconsistency can arise that puts the agency in, you know, between a rock and a hard place. The problem is the way that the amended regulations are written, it's not limited to the rock and hard place situation. You could have a decision like the Sixth Circuit with summit and we can just say that, well, the summit decision will be different in the Sixth Circuit for all time. There's no limits on how long or how many different circuits we're going to have. Doesn't the statute contemplate that you'll have differences if the regional circuits are distinguished, the D.C. Circuit? No. It doesn't? Well, no. It contemplates that the inconsistency can arise. Right. But reading 307 and 301 in harmony, what it's saying is in the situations where that does arise, EPA needs to identify this. Circuit created inconsistencies. What is EPA getting the D.C. Circuit, which handles the national rules? Correct. Regional circuits go in different ways. What is EPA supposed to do other than an acquiescence? Well, there are other things besides non acquiesce. We talked about them. They can go to the Supreme Court. They could let it maybe. Wait a minute. It cannot be your view that this regulation is illegal because it doesn't require the agency to seek cert whenever there is a one opinion of a circuit court that's inconsistent with their policy. It's not just that, Your Honor. And in comments, the petitioners all asked in comments saying, look, if this really is a problem, then put some limits around what you're doing. And the agency refused to do that. What does that mean? Well, for example, you could put some kind of time limit. How many circuits have to weigh in on this? Do you have to seek cert? Do you have to try to resolve the inconsistency through some type of a rulemaking? Should the general counsel look at it and determine whether something can be done to resolve the inconsistency of EPA? None of that is here. Counsel, there's an aspect of this whole case, a series of cases that puzzles me no end. The statute, I don't have it in front of me, as I recall, puts jurisdiction on it. Perhaps I shouldn't use jurisdiction. It's venue plus. It's not just venue. Venue plus. It puts a case in the D.C. circuit if there's a national regulation. Correct. But it doesn't limit it to national regulation. It's whenever the EPA administrator issues a determination. Isn't that correct? It has national implications. If it's nationally applicable and designated as such or if it's of nationwide scope or effect, then this court, it comes to this court. So all that has to happen is the EPA administrator has to make a determination. Isn't that correct? No, there are case law around that. I know, I know. I know there's a Fifth Circuit case which, frankly, I don't agree with. But as I read it, the administrator makes a determination that a matter is of national scope. Correct. He could be reviewed under EPA as being arbitrary and capricious. But I think he gets or she gets deference to that determination. If that determination is legitimate, the case, the issue, the case must come to the D.C. circuit. Isn't that correct? Yes. Assuming, you know, assuming like you said, you're getting the deference, it would come here unless you determined you didn't have jurisdiction for some reason. But, yes, it would come here. And, you know, Matt, and that begs the question. Doesn't doesn't that give you all the relief you seek? Because in the event that these regulations are illegal and you have a problem with a Sixth Circuit decision because your clients complain about the inconsistent treatment of different competitors. You could at that point seek a determination of the EPA administrator. Right. Yes. You know, and in fact, it seemed to me the summit case was of national significance. Right. While while there is the ability to file a petition for rulemaking, that doesn't mean it doesn't have to be a rulemaking. That's why I'm saying all it has to be under the statute is a determination of the EPA administrator. But that's in the rulemaking itself. And what happens in the statute. Now, what I'm saying is the determination is part of the rulemaking. It could be made in a rulemaking. It doesn't have to be made in a rulemaking. It could be made in an interpretive rule. It could be made a lot of ways. But once there is such a determination, as I read the statute, the issue must come. The case must come to the D.C. circuit. Yes. Well, doesn't that relieve most of your problems of uniformity? It doesn't. In the summit it didn't resolve it. That's because I think the summit case was handled incorrectly. Right. And I don't and I think the Texas case is wrong. I don't think it's up to the circuit court to decide whether a matter is national or not. I think that's a review of the EPA administrator. But the limits that are placed, and as this court found in NIDACAP, and what this court found, and Judge Edwards, you were writing that opinion, what it said was that what EPA was trying to do with inter-circuit non-acquiescence conflicted with EPA's regulations. Well, those regulations are virtually identical to the statute. I mean, your case, in order to be able to do what you want to do, it's critical that you find a distinction. I mean that you say that the regulations that we had in that first case were coterminous with the statute, but they're not really. The statute says to assure fairness and uniformity in the criteria. The regulations there say to assure fairness and uniformity in the application. Well, what about the – assuming your arguendo, you're correct. No, I am correct because I just read from the statute of regulations. But I would argue that those mean the same thing. Why weren't they written in the same way? But there is no mechanism provided here. Even if you could say that somehow the two A's were, you know, that they had managed to get past A, the statute says you must provide a mechanism for identifying and standardizing inconsistent or varying criteria. Right. The regulation in the NEDACAP case said that EPA had to provide mechanisms for identifying and correcting inconsistencies. And you could just read that to me on the C, which is what you're talking about, the mechanism. There is no mechanism here, Your Honor. If somehow there was a rule. Wait a minute. You don't need a mechanism. Excuse me, Judge Edwards. You don't need a mechanism if I'm right. All you have to do is request of the EPA administrator that he or she make a determination under the statute that the Sixth Circuit is right or wrong on that. And that was certainly an issue of national importance. Well, how do you interpret adjacent under the regulation? That was unquestionably of national significance. And you take, you petition the EPA administrator to make a determination, either in a rule or some other way, and then that case comes to the D.C. Circuit. If that is indeed something that's available, then that's what the regulation should say. Why does the regulation have to say that? Because the way they're written right now, they don't say that. What do you mean I don't understand? What they say is that we're just going to have something different in the Sixth Circuit from the rest of the country. The regulation only has to deal with the problem of inter-circuit acquiescence. It doesn't have to deal with everything. Well, what it's doing, Your Honor, is it's expressly allowing inter-circuit non-acquiescence when that is not what Congress wants. What it wants is to have a level playing field under the Clean Air Act, and it's very important. If that remedy that you're talking about is available, then that would be. . . Just to ask the same question that Judge Silverman asked in the previous case, was this argument that he's raising now mentioned by the other side? No, it was not. I want to go back to the regulations and the statute in the first case, because it does look like the statute is only talking about the criteria and making sure that all of the rules that are adopted and, if necessary, approved by the D.C. Circuit are the same across all regions, all circuits. It doesn't say anything about regional disparities, and the statute clearly allows for regional differences and the scope of the review is different. And even with respect to mechanisms, if the rule coming out of the D.C. Circuit, approved by the D.C. Circuit, the national rule says X, and the regional director covering the 5th Circuit says, well, you know, we want to do an X plus Y. They're supposed to have a mechanism to make sure, no, you don't do X plus Y. X is the rule that's been approved, and that's that. Why is it more than that? Well, it's X in all the . . . It's not about what the regulations said the first time, which is ensure uniform application of the rules. That's different from ensuring that all the rules are the same, that the rules are the same in every circuit. The regulations don't say that. The regulations in that first case say assure fair and uniform application of the rules. And that's how the agency got itself in trouble. In the legislative history, Congress made clear, this is on page 95 of the Joint Appendix House Report, that what this provision was trying to do was to ensure that the regional offices would be, and this is a quote, would be required to identify potential inconsistencies, and the administrator must provide for their expeditious resolution and for policy standardization. That's not . . . Look, the rule is X. It's not X plus 2. And so we mean for you to be following the criteria that we've adopted across all circuits. It doesn't say anything about what happens in regional cases, which are permissible under the statute, and different circuits go a different way. That's not a facial violation of the uniformity requirement. That's simply a circuit going a way that it's entitled to go under the statute, and you've got to find a remedy for that. Right. And the remedy that they're trying to seek, which is just to cabin that off and to allow the inconsistency to persist, adding to an item is not . . . What I'm suggesting to you, counsel, looks like the statute allows it to exist. And . . . The statute doesn't say anything about the agency having a requirement to cure inter-circuit inconsistencies with respect to cases that are properly in those circuits where the inconsistencies start to arise. What the statute does say is that EPA has to provide a mechanism for identifying and standardizing inconsistent, as you said, criteria, procedures, and policies. What you're going to end up with here . . . What I'm suggesting to you is a difference between national and regional. And if you look at the statute and look what they're trying to do now, they're trying to close that hole. The statute already allowed differences, and we were not dealing with it carefully in the first case. The statute allows differences between the national rules and enforcement actions in the regions, and apparently contemplates there will be some differences emanating from different decisions coming from the different regions. I don't see anything that requires the agency . . . I don't know how the agency would do it other than to go to the Supreme Court. Or start a new rulemaking. And that would take it back to the D.C. Circuit. So if you have three circuits that go different ways in an enforcement action, then the agency might have a responsibility to try and promulgate a new rule to address the issue because the circuits are all over the place, and then it would be back in the D.C. Circuit. Excuse me, counsel. May I just clarify one point? As I recall the statute, it does not require a rule to give the D.C. Circuit venue or jurisdiction. It's a . . . even a rule . . . It's a final agency action. Any final agency action which would include a determination. So that . . . and although my colleague rightfully asked whether the issue was raised, it was actually raised in the government's brief when they explained the problems they were facing with situations like the Sixth Circuit case or the Texas case, particularly the Texas case. So that if the EPA administrator makes a determination, final agency action, does not have to be a rule that is of national significance, that case comes to the D.C. Circuit. Isn't that correct? Yes. And what I am suggesting is that to the extent that were a remedy that were available, what ought to be done then is to say when this type of inconsistency arises, that maybe what EPA needs to do is put out some type of rulemaking or guidance, something along the lines that would be nationally applicable to try to resolve the inconsistency. Wait a minute. Even assuming I'm right, it doesn't mean that EPA must solve all problems in one regulation. What they're solving, no matter . . . even if I'm assuming I'm right, Judge Edwards is correct that there will be a certain number of cases that are brought as enforcement. That was not the Summit case. But enforcement in the district courts in which the national issue would not arise, not be expected to arise, and therefore the non-acquiescence regulation is particularly appropriate. It is critical, though, to my clients and to the regulated industry that there be a level playing field, and that the . . . and Congress recognize that. That is why . . . So you could, if I'm correct, and again I say that the EPA brief did discuss this, you could bring a request for an EPA determination of . . . My recollection is that what EPA said was that you could bring a petition for rulemaking, not that we could do what you're saying with all due respect. Well, the statute says determination. It doesn't say . . . But that's what I recall the EPA brief suggesting was a possibility. It's true, but they didn't specifically refer to a determination, but the statute does. Even if I'm right, that doesn't mean that EPA should have had to discuss it in a rulemaking dealing with non-acquiescence, because as Judge Everett points out, in an enforcement case, you would not know before . . . might not know beforehand whether you're going to get an issue of national implications or significance to arise out of it. That's the problem. I'm not understanding your answer, because these cases are entitled to go to the regional circuits, unless it's just facially clear. But even if it's facially clear that venue is improper, are you saying the EPA somehow violates the law if they don't seek venue, file a motion to dismiss on venue? What I'm saying here is that the regulations that EPA has put in place violate . . . Talk to me more broadly. The EPA goes . . . let's say a summit case. Did they have an obligation to move to dismiss on grounds of venue? No. They had an obligation, once that case was decided, to try to rectify the inconsistency, which ultimately they did do through national rulemaking. Right, of course. Well, why isn't that adequate? Well, you could petition for rulemaking, which is what I think they're saying. Petition for rulemaking. See, the problem you run into . . . But we have to try and be reasonable in understanding, what does that mean? Use summit. What does that mean? Well, the problem . . . If you're saying a failure to file a motion to dismiss on grounds of venue is not . . . that's not going to do it. Using summit, you can see, actually, the really critical part of summit is that what it went to is the heart of the Clean Air Act. What is a stationary . . . No, no, wait. Let me finish my question. That's not the interesting part of summit. The interesting part of summit is, what happens if three more circuits go different ways? And I'm trying to understand, what is it you think the agency is supposed to do? They're all in regional circuits. There's been no objection, and you say there's no requirement to move to dismiss on grounds of venue. So, you're not arguing they're violating the law by failing to dismiss on venue grounds. You now have four different decisions. What are they supposed to do? They can't overturn the circuit decisions by fiat. They'd have to go to rulemaking. What I'm saying is . . . Right. Right. Or to the Supreme Court, or to Congress, or to putting out some type of guidance to try to rectify . . . And all of those things are possible. No, guidance can't rectify if the decision from the Seventh Circuit says X. True. The decision from the Eighth Circuit says Y. They can't just adopt the guidance and overturn it. They need to . . . And I have conceded that there are situations . . . They need to what? They need to what? This is the conundrum now. That's what we figured out. How do you remedy it? They need to go to the Supreme Court. If that doesn't work, they need to do a national rulemaking to try to rectify it. If the situation arises where it truly cannot be rectified . . . Ma'am, I keep saying the statute does not limit it to rulemaking. It says it's determination. So if the EPA made a determination, a final agency action, it would be reviewable in the D.C. Circuit. And if they did that and it came here, then that would rectify the inconsistency. But that's not what they're doing here. Well, that's a choice they might have. That is a choice that they might have. But that's not what they did here. What they did here is to say we're just going to let . . . have the Sixth Circuit be different from the rest of the country . . . to do a critical decision of what is a stationary source. You could have petitioned for either a rulemaking or a determination by the EPA administrator . . . inconsistent with the Sixth Amendment . . . Yes, that is . . . in the Sixth Circuit. That is, but it is also, if you ended up . . . what if they denied that petition? I mean, that would be a final agency action and we could, you know, challenge that. But in the meantime, you still have what is a source is different in the Sixth Circuit than the rest of the country . . . and that's not what Congress intended. Okay, I'm sorry that I'm not following. Because I'm trying to listen to Judge Silverman's questions and your answers. But, so, you have a summit situation. It's a rule your clients don't like. Now, what are you supposing that they should do now? Don't tell me the Supreme Court again. I got that. Don't tell me they could initiate rulemaking. We got that. What else could they do? They can't just issue a guidance. They can't say this was an issue of national importance and therefore we reject the Sixth Circuit . . . although they are effectively rejecting the Sixth Circuit. That's the non-acquiescence doctrine. They could . . . the General Counsel could revisit it. They could . . . And do what? Examine whether there was something within the confines of those cases that could be used to try to rectify the . . . No, no, wait, wait, wait. So, now, I'm really listening carefully. You have the decision come down. Taking the Supreme Court off the table. Taking the possibility of rulemaking off the table. They're viable. Take them off, so I can understand what you're saying. They can't just say, oh, let's just all meet and worry about this. That's not a remedy for you. So, you still have the Sixth Circuit on the books. It's there. And they are saying our rule is what it is and we're not changing it if we're not going to rulemaking. And so, if the Sixth Circuit is out there, they're out there. What else are they supposed to do? Well, one thing that they could do, Your Honor, would be to have the General Counsel or EPA headquarters . . . and this is not in the rule . . . Right. Make sure that then how that Sixth Circuit decision is applied because that spans two different regions. EPA Region 4 and EPA Region 5. At least those two have to be consistent. That doesn't exist in the regulations right now. So, say for example, the fourth . . . the Region 4 says, we're going to take this definition of major source . . . and we're only going to limit it to the Title V program. But, Region 5 says, no, we're going to limit that to the Title V program and the New Source Review Program. Are they supposed to do that by rulemaking? So, say the Sixth Circuit decision comes down and part of the region is out of the Sixth Circuit, you're saying? Is that what your hypothetical is? No, it spans two different regions. Okay. So, what are they supposed to do to cause everyone to know? Under these regulations . . . No, no, no, no. Tell me what you think they should do. Well, at a minimum, they should say, the way that we are now going to apply this Sixth Circuit decision . . . is going to be consistent between Region 4 and Region 5. It doesn't say that. What does that mean? Because, that's what I was trying to explain. There's a possibility that, say in Region 4, they say, we're going to take this stationary source definition . . . and we're only going to apply it to Title V, which is what Summit was about. Right. But, Region 5 says, no, because the definition is the same for the New Source Review Program and the Title V program . . . we're going to apply it to both. Well, now you've got Region 4 and Region 5 taking this decision and doing it disparately. And, at a minimum, EPA should be able . . . should have to make sure those two are consistent, so that the Sixth Circuit is consistent. It's going to be disparate, no matter what. Well, it would be disparate from the rest of the country. I'm saying, okay, we're in a world where that Sixth Circuit . . . the Sixth Circuit decision is going to stand. There's nothing EPA can do. It tried to do cert, as you said. It couldn't do a rulemaking. It couldn't fix it. You can petition for rulemaking. We're going to take that off. But, we're going to have now . . . the Sixth Circuit is going to be different from the rest of the country. And, what I'm saying is the way these regulations are written . . . Wait a minute. Region 4 and Region 5 could be totally different. Wait a minute. Judge Edwards said you could petition for rulemaking, right? I could petition for rulemaking, but in the meantime, I have Region 4 and Region 5 inconsistent, because they didn't consult with headquarters. What do you mean they didn't consult with headquarters? Because they . . . You mean the administration. Right. The way the regulations are written, the regional administrator just decides that it's going to non-acquiesce. You see, they haven't violated the statute, because the national rule is still being applied. It's there. They haven't changed their national rule. But, they are obliged to follow the Sixth Circuit when the Sixth Circuit decision applies. I think what we are fundamentally disagreeing is on what was Congress' intent in 301A2. And, I believe that what Congress was saying was that it is EPA's obligation to try, to the extent it can, to resolve any inconsistency . . . I hear you, and I feel the pain, and I mean this sincerely, but honestly, the thing I most wanted to hear today . . . Tell me how you do this, because it's one thing to say, you know, we have a laudatory goal, and we're really concerned. I hear you. But, they have laudatory concerns as well. I agree. Because, they're like, what are we supposed to do? I think there are things they can do, and I agree with you that there are situations where maybe they can't. But, they're not even trying to restrict themselves to only the situations where they can't. Tell me . . . They are instead just saying . . . If you could write the regs now, to add three things that would clear it all up for you, and that could handle the situation that they face, what are the three things? Well, the first . . . Forget the Supreme Court, sir. Forget petition for rulemaking. What are the other things? Well, the one would be that, you know, to the extent a circuit decision crossed more than one region, those two regions have to apply it consistently. The other would be . . . The Sixth Circuit? The Sixth Circuit has already said no. No, the Sixth Circuit has the decision, but now what we have to make sure is that that Sixth Circuit decision is applied the same way in Region 4 and Region 5. But, why would I suppose that . . . There . . . . . . where there's a crossover, if there's anything in their regulations to suggest that where the Sixth Circuit issues something that's inconsistent with the national norm, why would we suppose from their regs that they're going to allow persons outside of the area of the Sixth Circuit to do it differently? They're not. The Sixth Circuit spans two regions. But, the way the regulations are written, those two regional administrators could interpret the Sixth Circuit decision differently. That's my point, and under these regulations. So, at a minimum, you should say, well, to the extent you have a circuit and we're going to non-acquiesce, the regions have to apply that non-acquiescence the same. It's not the person who's in the Sixth Circuit saying, that's not what the Sixth Circuit rules said. It doesn't say because you have regions that overlap. If you're in the area of the Sixth Circuit, you're bound by the law in the Sixth Circuit. Right, but with the example I was giving . . . The problem we're trying to get to is where the boundaries of the EPA do not coincide with the Sixth Circuit boundaries. But, I thought the meaning of the regulation was that in all states covered by the Sixth Circuit, you would have to apply the Sixth Circuit ruling. And, when states outside the Sixth Circuit, regardless of which regulation, would be non-acquiescent. That's correct, but there are contours of those decisions that the two regional administrators, or maybe even span three, would not necessarily need to . . . They can interpret it slightly differently with respect to different sections. Correct. I don't know how we write that, but in any event, what do your other two . . . Do you want . . . Yeah, that's a good point for judges. What you really want is consultation at Washington to decide whether the Sixth or the Fifth are correct. What my clients want is to have the rules be the same throughout the country, as much to the extent that they possibly can, so that there is a level of . . . That's a statutory change. And, to be a . . . Which, I believe, you've got to go to Congress for that, because Congress allows certain cases to go to the regions. So, you're going to get some differences. That's not . . .  If the agency is doing, that's Congress's job. That is what Congress says in 307, but then what 301 says is, to the extent EPA can, it must try. To the extent. Yes, to the extent it can, it must try. And, what I'm saying here, Your Honor, is that EPA is not trying. Okay, gotcha. Wait, don't go away, because I have some questions. Oh, I'm sorry, Judge Garland. Now, do you think the administrator has the power to disobey the Sixth Circuit's interpretation in the Sixth Circuit? That's called the Doctrine of Intra-Circuit Non-Acquiescence? No, I don't care what it's called. Do you think if the Sixth Circuit says, you must do this, that the administrator has the power to not do that in that circuit? I think that some agencies have interpreted the law that way. I know that there's . . . That's not the rule in our circuit, so I'm interested. If the Sixth Circuit says, this is the law in this circuit, do you think in that circuit that EPA can do something different? No, it should follow what the Sixth Circuit says. So, it doesn't have that power? No, which is why I've conceded that, to an extent, there sometimes can be an irreconcilable difference here. Okay, so now let's talk about the statute. It's always helpful to look at the words untold. 7601 says . . . And then in Part 2, it says . . . . . . such regulations shall be designed. So, all of 7601 is only where the administrator delegates to a regional official his powers, right? Correct. Well, he doesn't have the power that you're talking about. He doesn't have the power to do anything other than to have the regional administrators do what is required by the circuit in their area, correct? Correct. Okay, so, and that's all he's done here. If I look at Section 56.5B, it says . . . Inter-circuit or intra-circuit acquiescence. This is about the policies that the administrator wants to follow across the board, but not those policies that he can't follow because of law. But what it says next that the administrator must do is provide a mechanism for identifying and standardizing inconsistent or varying criteria procedures and policies. But that is all part of 7601A2, which is what you're supposed to do when you follow a delegation under 7601A1. And A1 is only a delegation of powers of the EPA administrator. And as we've just established, the administrator does not have the power to let the regions act inconsistently with a circuit decision in their circuit. So, I don't see why we should think that 7601 has anything to do with law questions where there is already a case on the board. Why should I think differently? Well, again, looking at the legislative history . . . Yes, go ahead. Which part? Jay, this is on page 95 of the Joint Appendix. It's the 95 to 96, right? Correct. Can you read that for me? What the House says there is that this provision, which they're talking about 301A2 . . . Yeah. The regional offices would be required to identify potential inconsistencies and the administrator must provide for their expeditious resolution and for policy standardization. Correct. But that says nothing about decisions driven by legal requirements. You want me to look at the next sentence, right? I don't have the next sentence. The next sentence of the Clean Air Act legislative history that you quoted in your brief sentence . . . Third, no legal interpretation of the regional office would be entitled to legal right unless approved in writing by the Office of General Policy. That's the only section that has anything to do with law, with legal interpretations. The problem is that this is the legislative history of House of Representatives Bill 6161. And House of Representatives Bill 6161 did have a section with exactly those words. That section did not make it into the final act. So, that part of legislative history is really, even to the extent we consider legislative history, it's not really relevant. In fact, you might say that Congress intentionally decided to eliminate that part. The part about requiring looking . . . going to the General Counsel for legal interpretations. So, I'm still stuck. This looks like a statute that requires policies of the agency to be consistent. But, it is not a section of the statute that requires the agency to act where 7607, the part that Judge Suderman has been quoting . . . the judicial review provision, intentionally sets up inconsistencies. Why is this analysis wrong? I think the two go together and are meant to harmonize. It's clear that Congress really wanted there to be a national policy. That's why nationwide rules, nationally applicable rules and those of nationwide scope come to this court. So, that they will be national, you know, the same throughout the country. Recognizing though that certain decisions would . . . were best decided by the states where they came from . . . and it goes to the cooperative federalism nature of the Clean Air Act. Congress did allow the regions to hear certain prescribed cases. Recognizing that that could then result in inconsistency is why you also have 301A2. So, the EPA then has to try to resolve it to the extent possible, so that we have a national level playing field, consistent definition. That would work if there's anything in . . . I'm going to call it 7601 because I don't have the . . . That's fine. There's nothing . . . that would work if they said anything like that in the statute. If they said the purpose of this or in the legislative history is to reconcile the problems we've created by the separate jurisdictional provisions of 7607. Or, if they said it's not about powers, it's about acting in response to legislation. But, that's not what the statute says. The statute is about the powers of the administrator, which you and I have agreed do not extend to ignoring court orders in a particular circuit. That really has never even been in your mind, has it? You've never even suggested that EPA should have a mechanism whereby they ignore the ruling of the Sixth Circuit in the Sixth Circuit. You've never suggested that. No. Right. So, and therefore, the provision in 56.5, which all it says is that the regional offices can act without consultation if such inconsistent application is required in order to act in accordance with a federal court's decision. That's all it says is if they're required. Now, I understand that you may think they may make a mistake about whether it's required or not. That's how you get into this problem of maybe one region thinks one thing and one region thinks another. But, there's nothing in the statute that requires them to solve that problem in this delegation. This is just a delegation that says if you are required, you should do it. Now, if you make a mistake and you weren't required, well, somebody's going to catch you. Somebody's going to sue in another place. Somebody in the same place is going to sue. Inspector General is going to ask you questions. But, all the regulation says is if you are required to act this way, then you should act this way. And I think fundamentally where we are disagreeing is on the meaning of 301A2. And I read that as a very clear directive from Congress for EPA to try. EPA is not trying here. It's not trying to limit the time or how many different circuits we're going to have before we, you know, adopt a nationwide policy. Let's say that the summit, they didn't do the nationwide rulemaking that they did. We end up with the Sixth Circuit saying that their adjacent definition is wrong. Then the Fifth. Then the Fourth. Then the Third. At what point is it that EPA needs to reexamine? It's national policy. Even if you wanted to have a regulation requiring EPA to seek cert in particular circumstances, that's not a delegation of power to the Regents. The Regents don't decide whether to seek cert. Actually, only the Solicitor General decides whether to seek cert. So, this is not a delegation of power. So, it wouldn't be within the regulation anyway. It wouldn't be within Section 56 because this is not a regulation to be followed in carrying out a delegation. But there is no mechanism in these regulations to try to resolve the inconsistency. That's because they're about what the regional administrators should do. They're not about what headquarters should do. You want a regulation for what headquarters should do. Right? The Regent can't seek cert on its own. No. Right? Only the administrator can go to the Solicitor General and ask for seeking cert. That's the only way you get to cert, right? Correct. And why shouldn't EPA be required to do that to ensure a level playing field? That would be a very unusual regulation. But even if it were, it's not one required by this section, which is only about delegations. It's a lot of a goal. You want to clean up inconsistencies among the circuits. You want to direct the administrator to figure out a way to do that. But only the administrator can do that. That's not a delegation question. And, therefore, it's not covered by 7601 at all, I don't think. All right. I think we will. Yeah. We're over. Thank you. All right. We'll hear from the EPA. May it please the Court. I'm Andrew Doyle with the U.S. Department of Justice. Karen Bianco and Carol Holmes with the EPA are at council table. Everything the Court, all the points the Court has made, we agree with. I can open it up for any additional questions. You agree with me, too? Yes. You clarified it later that the petition to the agency is for a rule or final agency action with a determination in it that it would have national scope or effect. So you don't have to go to a rulemaker. You can make a determination, which is final agency action. Well, the determination would be embedded within the final agency action. Of course. But you're not limited to rulemaking. The EPA allows you other devices. Correct. And Your Honor clarified that. You said as long as it's a final agency action. That's right. So you could create more uniformity by issuing final agency action of one kind or another, which included a determination which was inconsistent with the Sixth Circuit. And that would go to the D.C. Circuit. Correct. And the D.C. Circuit's decision on that would obviate the Sixth Circuit's. Correct. You're using the summit case as a hypothetical. Yes, I am. Now, what if there's a case. I think Texas and the Fifth Circuit is incorrect. And it's relevant because you raised this in your brief. The Fifth Circuit is incorrect, in my view, in stating unequivocally the question of whether something is of national significance is subject to de novo review in their court. I don't think that's right. I think your determination as to whether something is of national significance is reviewable under APA as arbitrary and proficient. And you're entitled to deference on that. Now, that puts me in the unusual position of suggesting the agency's got more power than it's asserting in the brief. Please put that in your opinion, too, or consider it. We understand the point, because that allows you, that procedure, either by rulemaking or by determination of final agency action, to insist that the matter be brought to the D.C. Circuit. That gives you uniformity. Correct. And this is part of the EPA's point in the rulemaking, that the agency non-acquiescence here issue is already subject to significant checks by virtue of the APA arbitrary and capricious review. That if, as Judge Edwards noted, you get into the third or fourth adverse decision and EPA is still holding on to its national policy, and the next final agency action where the issue comes up, that's going to be a harder case for the agency to sustain. Fine. Then you bring it to the D.C. Circuit. Well, if that's in the context of the rulemaking or other final agency petition. Or any determination that's final agency action. Correct. Then you'd bring it to the D.C. Circuit, and we would have, as I see it, exclusive jurisdiction on that venue. Correct, Your Honor. Then our rule would be the rule nationally. Right. And it could be a petition, or it could be the agency's sua sponte, issuing a final agency action. Now, Judge Edwards points out that that may not, as a little puzzle, you have an enforcement proceeding in the circuits. And the national significance issue is not apparent until it develops in it. And that raises a question whether you can remove or not. You tried that once, and it was rejected by one of the circuits, right? That was in the Fifth Circuit, correct. Right. I'm not sure what the right answer on that one is. But anyway, that's limited. It is. It's rather limited to a situation that wouldn't appear. Now, the Sixth Circuit case was obviously of national significance. Why didn't you bring that, make a determination, and bring it to the D.C. Circuit? Well, in the Sixth Circuit case, it was a petition for review of a applicability determination for a particular source. It was a permit question. Correct. But the issue was a clear issue of national significance, whether adjacent meant geographic or if you could take into account function. Well, that was the source's argument. They also had other arguments that we were misapplying even the interpretation that we've long espoused in that case. So it wasn't clear from the outset that that was going to turn on a determination of nationwide scope for effect. And as you noted, in enforcement cases, the provision for removing it to the D.C. Circuit simply does not apply. Those are exclusively- I agree. Judge Edwards has made that point. Right. But there's all kinds of other issues that arise locally that are of national significance, permit questions. That's correct. And if the only issue in that case had been adjacent, that was of national significance and you should have made a determination of some kind, final agency action, and brought that to the D.C. Circuit. I'm not sure we needed to make that in the initial applicability determination for the facility. But if it became clear when they filed their petition for review and identified the issue that they were intending to raise in the Sixth Circuit, then perhaps we could move for that. Judge, tell me, I'm not sure I'm following you on your answer to Judge Silverman. When he says it could be either rulemaking or, and so maybe I'm being a formalist in my head now. What is this or you're talking about? Is it- The statute. One possibility would be what happened in Summit. The or being you announced something and it was challenged. And then there was a question as to whether it was final agency action. A debatable, we held it was. And then it came to the D.C. Circuit. Now, what are the other ors? The agency could do what? An interpretive rule, for instance? Well, the two- We're going to get review on interpretive rule. If you look at the very long first sentence of section 7607B1, the very long first sentence, but it basically sets out those categories. You either have final rules or you have final agency action. And then the second rule says- You're not telling me, I'm asking you, tell me what you're talking about now. Right. So those, if it's a final rule- You do. Use Summit. What are you going to do? Well, let's assume you didn't issue that little memo that got you in trouble. Because if you hadn't done anything, nothing would have happened. The case would never have gone anywhere. So you put yourself in harm's way by issuing that memo. But let's assume- Just never write anything down. That's right. I'm not commenting. Was the memo final agency action? Well, we already have it. We already have it. But we held it was. I won't go back to- Judge Edwards said it was final agency action. So therefore, that's a perfect example, right? No, it's not a perfect- Well, that was debatable. But in any event, so- Well, I want to stay with Judge Edwards. It wasn't unanimous, though. Yeah, so tell me what you're talking about. Well, I'm talking about- Is it a question for rulemaking? Well, I'm trying to- Don't make it like Summit in that you issue that memo. And so- But the Sixth Circuit has issued something now which causes you great displeasure. Now, what are you going to do? Well, to get into this court exclusively, it has to be one of two things. It has to be a final rule or a final agency action that is either nationally applicable or based on a determination that it will have nationwide scope or effect. Tell me what you're going to do. I know what the statute says. I want to know. So you all meet and you say, okay, now let's do- and it's not going to be rulemaking. So tell me what this thing is. I don't think I've ever seen it. In the Summit memorandum that was reviewed in this court in NEDACAP 1, if we had put into that memo that this is a final agency action of nationwide scope or effect, it would be reviewed exclusively in this court. But it ended up being reviewed here anyway. Wait, I want you to anticipate what I'm trying to get at. That's not terribly helpful if I'm understanding your point. The Summit was a statement of non-acquiescence. You're talking about something that would either be a final rule or a final something that would say, Sixth Circuit, you're wrong. We want to make it clear you're wrong. In other words, Davis is asking what kind of final agency action other than- Achieves that. Right. What are you talking about? It has to be something about the underlying issue in the Sixth Circuit case. No, no. What's the procedure? What's the procedure? I've never seen it. The procedure is that the source or the agency's sous-pente is saying the agency action underlying the regional court decision at issue should be changed in light of the regional court decision. So it's just something hopeful as opposed to a rulemaking which is, this is a rule. Rules are probably the easiest example. But I want to know what you think this other- I'm trying to sort this case out. What do you think this other thing is? Because I haven't seen it. If it's an expression of hope, you know, whatever. No, it has to be something that meets the test of finality. Yeah, I'm not sure what it is. Well, maybe it's the summit memorandum because the court found- No, that's not going to be final agency action in the minds of a lot of courts, and so the Supreme Court might not buy that determination even though we made it. So tell me what else you have in mind because I'm not getting it. I don't think you are either. I don't- That's why I'm pushing you. Right, right. I'm not so sure. Judge Sillman knows whatever it is he's thinking about, but I'm curious what you think. Well, every time I think of something, then I say, well, that's a final regulation. So it's hard. No, it's not an interpretive rule. You can't get reviewed. Well, if it's adding text to the CFR, then we would agree that that's final agency action. It can be reviewed. If it's like in Perez at the Supreme Court where you're purely interpreting, then at least it doesn't require notice and comment. It doesn't mean it's not final. Correct. It still may be final. Final interpretive rule is final. Your Honor is absolutely correct. Can I ask you two questions? One small- Thank you, counsel. One small, one big. Small is, why did you leave out the poor D.C. Circuit in 56.3d, its authority for determinations of nationwide scope or effect? There you say, it's EPA's policy to recognize that only decisions of the Supreme Court and decisions of the U.S. Court of Appeals for the D.C. Circuit that arise from challenges to nationally applicable regulations or final action shall apply uniformly. Are you saying that if you make a determination that it is of nationwide scope or effect, and we make a decision, you don't think that has to be applied uniformly? No, we would agree that it does have to apply uniformly. So what's the explanation? A Scribner's error or- Well, I think if you look at the statute, the second sentence of the long first sentence I referenced earlier- Yeah. Brings it back into the first sentence if it's based on a determination of nationwide scope or effect and- Yeah, but you specifically say that arise from challenges to nationally applicable regulations or final actions in 56.3b, D.F.D. You don't mention the nationwide scope or effect. We don't question that, but we do cite 30.7b and the exclusive jurisdiction of this Court, and I think that makes it very clear what we're talking about there, that any time this Court is reviewing something nationally applicable or of national scope or effect, that will be binding throughout the United States. Well, I'm glad to hear that you read it that way, but it doesn't say that. You might want to fix that problem if that's what you think. But now let's get to the big question. How do you distinguish the regulation in our previous case from the statute in this case? Since we said that the regulation in this case is inconsistent with the statute, how is this going to get- Two things on that. Number one, the statute contains the phrase general applicable procedures and policies. We read that to mean in the ordinary delegated responsibilities of the regions, in the absence of judicial opinions, there should be reasonable uniformity. It doesn't- Isn't that what the general counsel's opinion in the previous case was about also? I'm sorry, I'm misunderstanding. The non-final, final agency action that you and Judge Edwards have been debating. Wasn't that also just a general policy? Isn't it the same? Well, the issue is- How is it different than this case? It's different than this case for, like I said, the statutory terms of 301 are different than the regulation, the original regulation here. First, the phrase general applicable modifies the statute. It doesn't appear in the regulation. Wait, wait, wait. Okay, just fine for me. Where are those words in the statute? Yes. If you go to 7601A2, it says the administrator shall promulgate regulations establishing general applicable procedures and policies. All right. And so we're saying that these are for the ordinary day-to-day delegated responsibilities, not the extraordinary event of a regional judicial decision. Your Honor has also pointed out, Judge Edwards pointed out that the regulations are more focused on the uniform application, so that's some difference in text as well. Your Honor, what's the difference between uniform application and fairness and uniformity in the criteria applied? That's what the statute says. It just puts the word applied in the past tense rather than I don't even know what form of the verb application is in that circumstance. Is there any difference in meaning between those two? Well, even if the Court does not, statutes, of course, are read in their broad context as well, and the Clean Air Act, as Judge Edwards and other panel members have noted, the Congress clearly set up a system where you will have conflict. I understand all that. I'm only trying to figure out how this case can square with our previous decision holding that the summit directive was not okay. Right. Well, in the summit, of course, there's – Are you sure the statute's language is slightly different from the regulation? Materially different, but yes. Yes. All right. It's different. Judge Garland is asking a question which mystifies me, too, which is does that difference have any significance with respect to the statutory question of uniformity? It does. It does. And this Court did not even reach the statutory question at all. I know. I know. I know. But why doesn't the logic of our opinion on the regulation apply equally with respect to the statute? Well, in the statute, you're interpreting Congress's intent, and the same Congress that knew there would be judicial splits wrote 301. But here it's even better for you in the previous case. You're interpreting the agency's intent, and you get our deference there. So – and yet you lost. Well, the – – that the EPA intended to exempt variants created by judicial decision. Well, now EPA has expressed that intent clearly in these amended regulations. But it found no indication in the language of the regulation, which is not very different than the language of the statute. That's the problem. It's – it's – we were reading language to exclude that possible intent. And what I'm saying is the statute contains different language enough to give EPA discretion to distinguish the Court's reading of the regulation here. Other than the word general, what is the – what is the language that builds it? General applicable is the main one. Fairness and uniformity of the statute gives the EPA discretion to interpret that. And now in the amended regulations, it's interpreting the significance of those terms for the first time in the context of judicially created inconsistency. It did not speak to that issue at all in the regulations. So the Court fell back on the – on the – what it said was the overwhelming impact of the regulations, and that was to assure uniformity, reasonable uniformity. Okay. So we're trying to cure the – we looked at all options. We found that this one meshes the best with the existing constraints on the agency under the – under the statute, whether it's the APA or the fallback provision. Is your position really – do I detect your position really, the proper interpretation of the prior opinion, even though the statutory language and the language of the regulation are very similar? Nevertheless, you can – we can interpret the prior opinion in light of the relief suggested, which was a new regulation for – along the lines of exactly what you did. Right. This is at page 1010 of the opinion. So in a sense, maybe there's tension between the suggestion in the prior opinion of the proper way to solve the problem and the analysis of the language. Well, we would say it's in perfect harmony. The Court's suggestion and what we did are – All right. I'm trying to say – I'm trying to suggest that maybe we can interpret the prior opinion in light of the suggested remedy and thereby give a little more play in the joints on the textual analysis. Right. In fairness to the Court, in the EPA's summit directive, it didn't get into an interpretation of the Act and how this is – what is reasonable uniformity in terms of the Act. It just went right to the bottom line. We're going to apply summit in the Sixth Circuit and nowhere else until we figure out what to do. The agency, by the way, has then taken additional rulemaking steps to bring as much uniformity as they can to the situation, at least with respect to onshore oil and gas facilities of the kind that were at issue in summit. I want to come back to one last point in light of the conversation the three of us have had. If you issue in a disputed situation where the Sixth Circuit decides something different from the general policy, if you issued an interpretive rule, a rule interpreting your regulation or interpreting summit, which was of national significance, isn't your position that that would be final agency action and jurisdiction would be exclusive in the D.C. Circuit? Yes, but we better make a determination that it's of national scope for effect. Of course, of course. Who is – who has grounds to review that and what's the scope of review? This court is where it would be reviewed. And is the scope of review arbitrary and capricious? It is. And it's not de novo? It is not. Thank you. You're saying, in effect, that the normal rule, that interpretive rules are not reviewable, would be overcome by the statutory language if you can say it's final, it would be reviewable? To me, the statutory standard, it must be final. That's correct. Justice in press, which was an interpretive rule. Correct. And the issue there was whether it required notice and comment, and it did not, as Chief Judge Garland has corrected me immediately on. I'm just worried that all these interpretive rule cases we've been hearing, well, maybe not worried. We don't have to hear them anymore. Right. All right. Well, I think that's it for you. We request that the petitions for review be denied. We figured. All right. What do we have now? Petitioner's rebuttal. Good afternoon, Your Honors. And may it please the Court, my name is Shannon Broome, and I'm here today on behalf of petitioners speaking in rebuttal in support of the argument that Ms. Wood previously gave. I would just like to make three quick points in my limited time. First is that the regulations under the statute must be designed to achieve fairness and uniformity and must be designed to provide a mechanism for identifying and standardizing inconsistencies.  and standardizing inconsistencies. That's only if there are regulations carrying out a delegation of the power of the administrator. Correct. That's what 7601A1 is about, delegations of power. To take up Judge Garland's point, aren't you really arguing that the regulation is too spare? It's not extensive enough. Judge Garland is pointing out all it does is deal with the delegation of power to the regional director. Your basic argument is that's not enough. Right. You're challenging a regulation, strangely in this case, by saying the agency didn't do enough in its regulation. It didn't reach as many issues as you would like. And that's sort of a strange situation, isn't it, where you're arguing that a regulation is not extensive enough? I take your point, Judge Silberman, that I would submit that what EPA has done is say that it can disregard a Sixth Circuit decision, even if it goes to a fundamental issue of the Clean Air Act and not speak at all to the rest of the country. And our clients, as we are dealing with permitting decisions, and when you're talking about the definition, as Ms. Wood said, stationary source goes right to the heart of the situation. I could have a source in Colorado that spans 43 miles and has a bunch of wells and have to permit that differently. You could immediately petition for some kind of final agency action of the administrator that would express a view as to whether he or she agreed with the Sixth Circuit or not. Yes. And then it would be immediately brought to this court, and you'd get a final determination. That assumes that EPA certifies it, and that is one issue with the Clean Air Act. Yes, but if EPA refused, they could be challenged for a failure to do so as arbitrary and capricious. That assumes that that particular person is my client. I'd love to have everybody as my client, and I would do that with them. But if there's some other source in Colorado that doesn't appeal that because they need to get their permit and move on for economic reasons, it's not going to get that resolution. And so EPA will continue in that space. Somebody else. It doesn't have to be the party who's seeking the permit. Anybody else could petition for a rulemaking. Oh, you're saying I'd have to petition for rulemaking? Or any other final agency action so as to deal with or create uniformity. I could, as Allison said, I could petition for rulemaking. Or any other final agency action to get a determination of national significance, and then brought immediately to this court. So you're suggesting, I just want to make sure I understand the question, you're suggesting that I could generate a situation where I have a client who asks the question, gets a determination. No, we're not applying the Sixth Circuit decision here. And I could then appeal that here. You could. You have under the EPA, you have devices. You could petition for rulemaking. You could petition EPA for some other final agency action inconsistent with the opinion you dislike. I'm not sure that as a practical matter that I would be able to get EPA to respond to that petition in a timely way. I think they'd respond with alacrity if they didn't like the Circuit Court opinion. I'm sorry, I didn't hear what you said. I think they would respond with alacrity if they didn't like the Circuit Court opinion. Maybe. Yeah. I mean, the problem is that may not be a satisfactory answer for you. But I think the problem for us is that we're not sure what you think is viable. The Chief Judge has raised one serious concern about the nature of the case, which poses problems for you. And I have other questions. I just don't see what you're really talking about. If you're not talking about petitioning for rulemaking. You want you want the EPA administrator to sweat. No, I'm happy to work with EPA at any time. No, I mean, you want them to get worried and nervous and upset and do something. But this is a strange request for a remedy. Well, I. Petition for cert. Reissue a regular. Do something. Do something. That's the burden of your brief. Do something. I would say that it's not problematic for them to issue a rule that results in inconsistency. They did that here in the Webco case in 1989. I guess you saw what relief you're seeking. And what you're seeking is do something, which is a strange case. We are seeking criteria by which if they fail to do anything, we are able to challenge that as arbitrary and capricious underneath, under their regs. Because their regs are not designed for acquisition. Isn't there another way of saying do something? We don't know what to do, but do something. You can challenge it for arbitrary and capricious review if you seek rulemaking and they decline. Right. It's a tough standard, but you can do it. I understand the rulemaking point. If you didn't like the summit opinion and you were in a different circuit, and you were in that circuit, you want them to have rulemaking which overturns the summit opinion nationally. Is that right? Is that your idea? Yes. If I didn't like it. I do like it. I just want to be clear. If you didn't like it. But then somebody in that circuit, when they tried to enforce against it, would say that's unlawful. And the EPA would say, well, you don't have jurisdiction over that. We have to you have to go to the D.C. circuit to argue this one now. So they go to the D.C. circuit, challenge it. And if the Supreme Court takes cert, then they overturn it. Likewise. And that seems like a long way to get to a final decision. Likewise, if you're in that circuit and you didn't like the summit, you could have sought cert. I appreciate, again, you're on the other side. Whoever was on that side could have sought cert. Or if you're in, I don't know, an adjoining state. So there are ways, if you don't like a result, to get uniformity on your own. The same way, going to the Supreme Court. Well, I guess I would hearken to an example, a different example. We have a split in the circuits on routine maintenance, repair, and replacement under the New Source Review Program. And there are some circuits that hold that it needs to be routine. To qualify for this exemption from New Source Review, it needs to be routine at the unit. Then there are other cases that, and I could cite those, I could get the slides for you. I don't have them. We are willing to consider a lot of inter-circuit. Right. So then there's another line of cases that says it needs to just be routine in the industry. So if I'm a source in that circuit and there's something that I would do in every unit but only once in the life of that unit. Statutory interpretation, right? Right. So the loser can always go to the Supreme Court. And that seems like, if the Supreme Court is willing to take cert, that seems like a faster way to get uniformity than to instead be asking the administrator, issue a rule which overrules whatever the rule was in that other circuit, and then try to get the case in the D.C. circuit, and then go to the Supreme Court. Because whoever didn't like it and liked the other circuit would challenge it. He's correct. It would be quicker. But the chances of getting cert are pretty remote statistically. In both circumstances. And EPA argues that it shouldn't be forced to go to the Supreme Court because so few cases are taken by the Supreme Court. And I think the same is true for us. No, no, we take whatever we get. No, no, I mean the Supreme Court when we ask. Further questions were six minutes over. Thank you very much. We'll take the matter under.
judges: Garland, Edwards, Silberman